***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award. The Full Commission AFFIRMS with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. The parties are subject to the jurisdiction of the North Carolina Workers' Compensation Act and to the North Carolina Industrial Commission.
2. Plaintiff sustained injuries to his right hand on January 21, 2008, in the course of his employment with defendant-employer when it was crushed between a furnace and a door.
3. Plaintiff was terminated from his employment by defendant-employer on July 21, 2008.
4. Plaintiff's average weekly wage was $649.81, which yields a compensation rate of $433.23 per week.
5. Defendants accepted liability and are paying temporary total benefits of $433.23 per week, and are covering medical expenses with the exception of a referral to a pain management clinic, which was agreed upon at the hearing before the Deputy Commissioner.
6. The following exhibits were admitted into evidence:
 a. Stipulated Exhibit Number 1, Pre-Trial Agreement
 b. Stipulated Exhibit Number 2, Industrial Commission Forms, Medical Records
 c. Stipulated Exhibit Number 3, Surveillance DVD
 *********** ISSUES
1. Whether plaintiff's activity level is inconsistent with his statements to his treating physician; and
2. Whether plaintiff has been compliant with vocational rehabilitation, and if not, should plaintiff be ordered to comply.
 *********** *Page 3 RULING ON EVIDENTIARY MATTER
Defendants filed a motion with the Full Commission to receive additional evidence consisting of a DVD of surveillance of plaintiff conducted December 30, 2009. Defendants also filed a new Form 24 Application on March 24, 2010, based on the same surveillance. In its discretion, the Full Commission denies defendants' motion and declines to reopen the record to receive the additional evidence. The Form 24 Application shall be heard as provided in the Award portion of this Opinion and Award.
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 45 years old. Plaintiff quit school halfway through the ninth grade and did not complete high school or obtain a GED. Plaintiff indicated he worked 26 years installing heating and air conditioning.
2. Plaintiff was employed by defendant-employer as a heating and air conditioning installer. His duties in this position required him to climb into attics, under houses, and in basements; saw openings to install vents; cut and fit metal duct work; and install heavy furnaces.
3. On January 21, 2008, while removing a furnace from a closet, plaintiff's right wrist was pinned between the closet door and furnace, causing plaintiff's right wrist to be injured. Defendants initially denied plaintiff's claim, but then accepted the claim pursuant to a Form 60 dated April 22, 2008. *Page 4 
4. On February 6, 2008, plaintiff sought treatment for right wrist complaints with Dr. Peter Whitfield, who performed an injection of the wrist and referred plaintiff to Dr. Matthew Weingold for a second opinion.
5. On February 17, 2008, plaintiff underwent an MRI of the right hand, which revealed tenosynovitis of the wrist and a cystic mass. On April 21, 2008, Dr. Weingold performed deQuervain's release and synovectomy on the right wrist.
6. Subsequent to his surgery, plaintiff received a compression glove and underwent a series of sympathetic blocks to the wrist performed by Dr. Scott Bertrand. Plaintiff was also prescribed a TENS unit due to his ongoing pain complaints.
7. On December 9, 2008, Dr. Weingold opined plaintiff had reached maximum medical improvement and assigned a 15% permanent partial impairment rating to the right hand. Dr. Weingold believed that plaintiff may also suffer from complex regional pain syndrome. Dr. Weingold recommended plaintiff undergo a functional capacity evaluation (FCE) and receive a second opinion evaluation.
8. On January 17, 2009, orthopedic surgeon Dr. William Gramig performed a second opinion evaluation. Plaintiff reported constant pain, discomfort, poor motion and limited use of the right extremity. Dr. Gramig noted plaintiff exhibited an element of Type II complex regional pain syndrome, but that he was not a surgical candidate. Dr. Gramig assigned a 20% permanent partial impairment rating to the right wrist.
9. On January 8, 2009, plaintiff underwent an FCE, as recommended by Dr. Weingold. The FCE revealed plaintiff was capable of light physical demand level work, including occasional lifting of 20 pounds, avoiding forceful right hand grip and pinched postures, and avoiding right-handed repetitive dexterity hand tasks. *Page 5 
10. The evaluator who conducted the FCE noted that plaintiff provided maximum effort during testing. Prior to the surveillance of plaintiff, there is no report in the medical records that any provider suspected plaintiff was exaggerating his symptoms. The Full Commission finds the FCE to be a credible evaluation.
11. Subsequent to the FCE, defendants obtained surveillance video of plaintiff performing activities in his backyard and removing items from the back of a pickup truck. The surveillance video showed, and plaintiff's testimony confirmed, plaintiff folded copper tubing, coiled rubber tubes, and used both hands to break some of the tubing in half. Plaintiff was not wearing his TENS unit on his right wrist while performing these activities.
12. Plaintiff testified the surveillance showed him removing copper tubing weighing approximately 6 to 7 pounds, which he coiled without difficulty due to the flexible nature of the tubing. He also lifted some heating coils weighing approximately 6 to 8 pounds. Plaintiff stated he did not wear his TENS unit because he was out of the adhesive patches, but would not have worn the unit to avoid staining it with grease and oil.
13. On the 22-minute surveillance DVD taken January 22, 2009, plaintiff is observed using both hands and coiling some type of tubing and moving items from the back of a pickup truck to a position on the ground. When plaintiff moves a box-shaped object, he is observed using both hands to grasp the object around the top edges and place it on the ground. When plaintiff, who is right-hand dominant, moves a rectangle, lid-shaped object, he uses his left hand to pick the object up from the back of his truck and place it on the ground. His right arm remains straight by his side while he is moving the object. Other activities plaintiff is performing with both of his hands during the surveillance is blocked by a large tree, which obscures the view. *Page 6 
14. After reviewing the surveillance, Dr. Weingold withdrew his February 3, 2009 work restrictions. In the DVD Dr. Weingold believed that plaintiff was exhibiting normal use of the right hand, including normal motion and strength and some heavy lifting. Based on his knowledge of heating and air conditioning jobs, Dr. Weingold stated that plaintiff was probably capable of returning to his pre-injury employment, at least on a trial basis. Dr. Wiengold did not have a job description of plaintiff's duties and admitted he was unaware of exactly what plaintiff's job entails. Dr. Weingold did not change the permanent partial impairment rating he assigned because plaintiff "still had a dystrophic reaction to surgery and still has some superficial radial nerve symptoms."
15. Dr. Gramig also reviewed the surveillance. Dr. Gramig deferred to Dr. Weingold's opinion regarding work restrictions, due to Dr. Weingold's established relationship as plaintiff's treating physician. When Dr. Gramig was questioned about whether the activity performed by plaintiff during surveillance was inconsistent with his examination, Dr. Gramig stated that doing work for a short period of 30 minutes does not equate to being capable of performing the same work for 8 hours a day, 40 hours per week.
16. In reviewing the competent evidence of record, including the medical records, lay and deposition testimony, and the surveillance tape, the Full Commission assigns greater weight to the FCE and the testimony of Dr. Gramig in considering plaintiff's ability to return to work. Dr. Gramig opined and the Full Commission finds that the FCE remains the best source of information to rely on when considering plaintiff's permanent restrictions. The FCE is designed to evaluate plaintiff's abilities. The 22 minutes of activity captured by surveillance do not establish plaintiff's ability to return to his pre-injury employment as a heating and air conditioning installer which requires heavy lifting and working 40 hours per week. *Page 7 
17. On March 4, 2009, plaintiff began participating in vocational rehabilitation services directed by defendants. As of the date of the hearing before the Deputy Commissioner, plaintiff had applied for 45 jobs, but had not received an offer of employment. Plaintiff was complying with vocational rehabilitation by keeping scheduled appointments and following through on job leads.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On January 21, 2008, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer, resulting in an injury to his right hand. N.C. Gen. Stat. § 97-2(6).
2. Defendants admitted the compensability of plaintiff's injury by accident on January 21, 2008, by filing a Form 60. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff.Sims v. Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277, disc. review denied,353 N.C. 729, 550 S.E.2d 782 (2001).
3. In order to meet the burden of proving disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury.Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) *Page 8 
evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. Lowes ProductDistribution,108 N.C. App. 762, 425 S.E.2d 454 (1993) (citations omitted). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms., Inc., supra.
4. In the instant case, plaintiff met his initial burden to show that he is disabled. Plaintiff was unable due to his compensable injury to return to his regular job or to any other employment from the date of his last employment until January 8, 2009. Thereafter, plaintiff was capable of some work and has made a reasonable effort to find employment. Demery v. Perdue Farms., Inc., supra.
5. Defendants have not shown that suitable jobs are available for plaintiff and that plaintiff is capable of obtaining a suitable job, taking into account plaintiff's physical, mental and vocational limitations. Demery v. Perdue Farms, Inc., supra.
6. As a result of his compensable injury, plaintiff is entitled to continuing total disability compensation at the weekly rate of $433.23 from the date of his last employment and continuing until he returns to work or further Order of the Commission. N.C. Gen. Stat. § 97-29. *Page 9 
7. As a result of his compensable injury, plaintiff is entitled to receive further medical treatment that would effect a cure, give relief or lessen his period of disability, subject to the limitations of N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. §§ 97-25, 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee approved below, defendants shall pay plaintiff continuing total disability benefits at the rate of $433.23 beginning the date of plaintiff's last employment and continuing until he returns to work or further Order of the Commission.
2. Defendants shall pay the medical expenses incurred or to be incurred by plaintiff as a result of his compensable injuries when bills for the same have been submitted in accordance with proper Industrial Commission procedure.
3. A reasonable attorney's fee of 25% of the ongoing compensation due plaintiff under Paragraph 1 of this AWARD is hereby approved for plaintiff's counsel and shall be paid as follows: every fourth compensation check shall continue to be paid to plaintiff's counsel.
4. Defendants' Form 24 Application filed with the Commission March 24, 2010 is not properly before the Full Commission for review and therefore is not ruled on at this time. The Form 24 Application shall be reviewed on an expedited basis by the Executive Secretary's Office or the parties may file a request with Chief Deputy Commissioner Wanda Blanche Taylor for an expedited hearing before a Deputy Commissioner.
5. Defendants' motion for an order to compel compliance with vocational rehabilitation IS HEREBY DENIED. *Page 10 
6. Defendants shall pay the costs.
This the ___ day of June, 2010.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER *Page 1